PRIES v TRAVELERS INSURANCE COMPANY

Docket No. 77-2916. Submitted June 14, 1978, at Grand Rapids.—
   Decided October 2, 1978. Leave to appeal applied for.

   Charles M. Pries was injured in an automobile accident and filed
   a claim with Travelers Insurance Company for benefits under a
   policy of no-fault automobile insurance. Pries claimed that he
   was entitled to $1,000 per month for lost wages and reimburse-
   ment for expenses up to $20 per day for replacement services.
   Travelers claimed that the $20 per day for replacement ser-
   vices was to be included in the wage loss figure, and that
   therefore Pries was limited to a total recovery of $1,000 per
   month. Pries filed a complaint for a declaratory judgment as to
   the amount due him under the insurance contract and for the
   monies due, and the Berrien Circuit Court, Chester Byrns, J.,
   denied Travelers' motion for partial summary judgment on this
   issue. Travelers appeals by leave granted. *Held:*

   The statutory language providing payment of wage loss bene-
   fits and replacement services loss benefits allows payment of
   these two types of benefits separately, each subject to its own
   stated limit. Replacement services loss benefits are not to be
   included within wage loss benefits.

   Affirmed.

AUTOMOBILES—INSURANCE—STATUTES—WORK LOSS BENEFITS—RE-
   PLACEMENT SERVICES BENEFITS.

   The section of the no-fault automobile insurance act that provides
   for payment of work loss benefits and for replacement services
   loss benefits is to be interpreted to mean that the payment for
   replacement services is not to be included within the maximum
   payment for work loss; rather, each category is subject to its
   own stated limit (MCL 500.3107[b]; MSA 24.13107[b]).

*Seymour, Seymour, Conybeare & Straub* (by *Co-
lin H. John, Jr.* and *Bruce C. Conybeare*), for
plaintiff.

REFERENCE FOR POINTS IN HEADNOTE
New Topic Service, No-Fault Insurance § 29.

*Fisher, Troff & Fisher,* for defendant.

Before: D. E. HOLBROOK, JR., P.J., and T. M. BURNS and W. VAN VALKENBURG,* JJ.

T. M. BURNS, J. We granted defendant Travelers Insurance Company's delayed application for leave to appeal from the trial court's denial of its motion for partial summary judgment to consider a question relating to the payment of no-fault insurance benefits under MCL 500.3107(b); MSA 24.13107(b).

From the settled record[1] it appears that plaintiff was injured in an automobile accident on October 30, 1974. The injuries received in the accident included a broken leg. Because of this injury, plaintiff was unable to work from October 30, 1974, until April 30, 1975, and again from December 14, 1975, until February 14, 1976.[2] Plaintiff claimed he was entitled to $1,000[3] per month for wages lost and reimbursement for expenses up to $20 per day for replacement services which he had actually obtained. Defendant urged in its motion for partial summary judgment that plaintiff's total recovery in any 30-day period for lost wages and replacement services combined was limited to $1,-000.

This difference in interpretation of § 3107(b) of

---

* Former circuit judge, sitting on the Court of Appeals by assign-. ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] The case has not been tried below to determine the extent of plaintiff's work loss and replacement services loss. For purposes of this appeal, the parties have stipulated that this loss will exceed the statutory maximum.

[2] The second period of disability resulted from the surgical removal of a pin which had been inserted to aid in the healing of the broken leg.

[3] Throughout the opinion we use 'the $1,000 and $20 limits which appeared in the original act. The benefit level had been raised by the Commissioner of Insurance for the year of this accident. We use the figures which appeared in the original act only for purposes of clarity.

the no-fault automobile insurance act presents the issue we must decide: does the maximum monthly benefit allowance under the no-fault act for "work loss" include the daily allowance for expenses incurred in obtaining ordinary and necessary services? We answer no and affirm Judge Chester Byrns' denial of summary judgment.

Section 3107(b), which provides for the benefits and sets the limits in question, states that personal protection insurance "benefits are *payable*" for:

"(b) *Work loss* consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he had not been injured *and expenses* not exceeding $20.00 per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he had not been injured, an injured person would have performed during the first 3 years after the date of the accident, not for income but for the benefit of himself or of his dependent. * * * The benefits payable for work loss sustained in a single 30-day period and the income earned by an injured person for work during the same period together shall not exceed $1,000.00, which maximum shall apply pro rata to any lesser period of work loss." (Emphasis added.)

The concepts of "work loss" and "replacement services loss" are both drawn from the Uniform Motor Vehicle Accident Reparations Act (UMVARA), 13 ULA (Master ed), p 349 *et seq.* Sections 1(a)(5)(ii) and (iii) of the UMVARA provide:

"(ii) 'Work loss' means loss of income from work the injured person would have performed if he had not been injured, and expenses reasoanbly incurred by him in obtaining services in lieu of those he would have performed for income, reduced by any income from substitute work actually performed by him or by in-

come he would have earned in available appropriate substitute work he was capable of performing but unreasonably failed to undertake. `

"(iii) 'Replacement services loss' means expenses reasonably incurred in obtaining ordinary and necessary services in lieu of those the injured person would have performed, not for income but for the benefit of himself or his family, if he had not been injured."

The Legislature, in adopting § 3107(b), did not enact the second part of the UMVARA work loss concept, that is, "services in lieu of those he would have performed for income", but only the wage, or "income from work", component. However, we do not conclude from that fact, as does the defendant,[4] that the reimbursement for loss of income and replacement services is subject to a single limit of $1,000 per month, i.e., that "replacement services loss" is a mere component of work loss.

As we read the act, it provides that benefits are payable for two things, work loss and replacement services, and each is subject to its own separately stated limit. We reach that conclusion based on the language of the section itself and what we perceive to be the purposes of the act.

First, the "and" in the first sentence of § 3107(b) does not relate back to the "consisting of" and "work loss" language, but to the word "payable" which appears before the colon. Second, is the manner in which the limits are stated. The $20 per day limit is stated in the sentence granting recovery for replacement services. The $1,000 per month limit appears in a later sentence which requires that the benefits for work loss, wages or earned income from services under our construc-

---

[4] Defendant is certainly not alone in its interpretation of this particular section. The Insurance Commissioner and some writers have reached the same conclusion. *See, e.g.,* Forkosch, *1973 Annual Survey of Michigan Law, Torts,* 20 Wayne L Rev 647, 652.

tion, and actual income earned not exceed the limit. There is no mention of replacement services or comparable language in this sentence.[5] The defendant's interpretation would discourage, rather than encourage, an injured person's incentive to return to work.

The Supreme Court read the statute in the same manner, *i.e.,* two benefits payable each with its own limit, in *Shavers v Attorney General,* 402 Mich 554, 620; 267 NW2d 72 (1978). This reading is consistent with the purposes of the act which include speedy delivery of benefits and reduced litigation. If the defendant's construction were accepted, lower first party benefits would be paid and more injured motorists would be required to seek redress under the residual liability section, MCL 500.3135(2)(c); MSA 24.13135(2)(c). Such an interpretation would be counterproductive to the goals of the act.

The trial court is affirmed and the matter remanded for further proceedings not inconsistent with this opinion. No costs, construction of a statute being involved.

---

[5] We also consider the fact that the act mentions "daily" and "monthly" limits in the residual liability section, MCL 500.3135(2)(c); MSA 24.13135(2)(c), significant and supportive of our interpretation.