# STATE OF MICHIGAN

# COURT OF APPEALS

JON WAALKES,

      Plaintiff/Counterdefendant-
      Appellee,

v

RESOURCE COMMUNICATIONS, INC.,

      Defendant/Counterplaintiff/Third-
      Party Plaintiff-Appellant,

and

HENRY R. DUNNICK,

      Defendant-Appellant,

and

DESIGN CREATE SOLVE LLC,

      Third-Party Defendant.

UNPUBLISHED
September 11, 2018

No. 341505
Kent Circuit Court
LC No. 15-009926-CK

Before: SAWYER, P.J., and STEPHENS and GADOLA, JJ.

PER CURIAM.

Defendants Henry R. Dunnick and Resource Communications, Inc. ("RCI") appeal as of right an Order of Judgment entered on November 28, 2017 by Kent County Circuit Judge Christopher P. Yates, denying their claim for monetary damages due to plaintiff Jon Waalkes' breach of his employment agreement. We affirm.

## I. BACKGROUND

Dunnick, on behalf of his company RCI, and Waalkes were the signatories to an October 5, 2010 employment contract. Under the agreement, Waalkes was to work full-time for RCI, and was to be paid 50 percent of the gross profits on the sales he generated. The agreement also established a financial goal of "total gross profits of $750,000" as the point at which the

-1-

agreement would automatically terminate. On September 8, 2015, plaintiff provided a letter to defendant Dunnick giving written notice expressing his intent to leave RCI and noting that he was fast approaching the $750,000 goal. He communicated his plan to continue working in a similar capacity with his current customer and vendor base under a newly formed company Design Create Solve, LLC ("DCS") to Dunnick. Plaintiff advised Dunnick that he would complete all work in progress, even after transitioning to DCS. The parties began discussions on the terms of an accelerated separation process. During these discussions the parties agreed that the preliminary amount of received gross profits was $705,000 and an additional $30,000 was in process through invoice orders and work in progress. They discussed an arrangement where the remaining $15,000 would be offset against the amounts which would become payable to Waalkes from RCI as commissions. However, prior to any formal modification of the written agreement, Dunnick sent plaintiff an email on September 22, 2015 stating that plaintiff's plans were in violation of their employment agreement. From that point forward the relationship between plaintiff and defendants became contentious. Dunnick locked plaintiff out of all of RCI's computer systems. This restriction made it impossible for plaintiff to directly access customer files or issue computer based purchase orders. In order to service accounts, plaintiff hand wrote purchase orders, took pictures of them and transmitted those photographs to Dunnick on his phone. This process resulted in a time-sensitive order plaintiff secured with one of his vendors being mishandled and delayed RCI's receipt of payment.

On October 26, 2015 plaintiff began operating under his new company DCS and filed an action for declaratory relief seeking to have the parties' respective rights under the employment agreement clarified. RCI and Dunnick filed a counter claim for damages and injunctive relief to protect RCI's customer base. Most of the facts in the case were undisputed. There was no dispute that Waalkes began working for DCS prior to meeting the $750,000 gross profit financial goal of the employment agreement. They also agreed that RCI ultimately received $751,000 in gross profits arising from Waalkes' work on behalf of RCI and that at the time of Waalkes' commencement of his new venture the invoices that generated that profit were "in progress." During the bench trial, defendants argued that plaintiff's departure was premature because he did not meet the $750,000 goal until February 12, 2016 and thus he breached the employment agreement entitling them to monetary damages. Plaintiff conceded during the bench trial that he stopped "soliciting work for RCI on October 26, 2015." However he asserted that he continued to work on all work in progress for RCI despite being locked out of the RCI computer system which delayed his meeting the financial goal significantly. He emphasized that his efforts netted RCI gross profits in excess of the contract target.

The trial court issued an opinion and order that held that while plaintiff did breach section 8(b) of the employment agreement by engaging in business activities prior to reaching the goal in February 2016, defendants failed to establish that they suffered any damages arising from the breach. The court declined to award monetary damages because defendants had in fact received the contractual benefit of the total gross profits of $750,000. However, the court issued an injunction pursuant to sections 7 and 8 of the employment agreement, ordering plaintiff to honor his contractual obligations to refrain from soliciting business from customers on defendants' protected list. Defendants Dunnick and RCI now appeal as of right.

## II. DAMAGES

We review a trial court's determination of damages following a bench trial for clear error. *Marshall Lasser, PC v George*, 252 Mich App 104, 110; 651 NW2d 158 (2002). "Clear error exists where, after a review of the record, the reviewing court is left with a firm and definite conviction that a mistake has been made." *Id.* A damage award is not clearly erroneous where the damage award was within the range of the evidence presented, and the trial court was aware of the issues in the case and appropriately applied the law. *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 516; 667 NW2d 379 (2003).

Defendants first argue that the trial court erred in failing to find that the plaintiff breached section 2 of the contract. While this Court agrees that plaintiff also breached Section 2 of the employment agreement, we do not agree that this breach entitles defendants to monetary damages for the same reasons the trial court stated on the record for its denial of monetary relief.

"In an action based on contract, the parties are entitled to the benefit of the bargain as set forth in the agreement." *Ferguson v Pioneer State Mut Ins Co*, 273 Mich App 47, 54; 731 NW2d 94(2006). Under Section 2 of the agreement, plaintiff had a duty to "devote his full-time business efforts to solicitation and promotion for sale of the employer's products and services" until such time as he was no longer an employee "i.e." when the employment agreement terminated. Plaintiff conceded at trial that he stopped his full-time efforts in procuring new additional sales for defendants as of October 26, 2015 and he agreed that the financial goal was not met until February 12, 2016. By ceasing to secure new orders for defendants prior to attaining the $750,000 goal he failed to fulfill this obligation under Section 2 of the employment agreement. "The rights and duties of parties to a contract are derived from the terms of the agreement." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 62; 664 NW2d 776 (2003).

Nevertheless, defendants are not automatically entitled to damages because of plaintiff's breach. The party claiming a breach of contract "must establish by a preponderance of the evidence that (1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of Am, NA v First Am Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016).

The trial court found two instances of breach and this court has determined that a third breach occurred. Regardless of the error as to Section 2, the trial court correctly determined that the defendants failed to prove they suffered any compensable damages arising from the plaintiff's breach. The general rule is that a remedy for breach of contract should make the nonbreaching party whole or put the nonbreaching party in as good a position as if the breach had not occurred. *Roberts v Farmers Ins Exchange*, 275 Mich App 58, 69; 737 NW2d 332 (2007). Put another way, the nonbreaching party is entitled to the monetary value of the bargain made by the parties. *Ferguson, supra* at 54. As noted, the defendant ultimately received "$751,000 and change" as a result of plaintiff's efforts.

Accordingly, because plaintiff satisfied his entire financial obligation to defendants, the trial court did not err when it ruled that defendants were not entitled to any monetary damages as a result of plaintiff's breach.

Affirmed.

/s/ David H. Sawyer
/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola