BRASHEAR v DETROIT AUTOMOBILE INTER-INSURANCE
EXCHANGE

Docket No. 69675. Submitted November 9, 1983, at Grand Rapids.—
Decided August 6, 1985.

Gary Brashear was injured in an automobile accident. As a result
of those injuries, Brashear was unable to work for a period of
three and one half months and was able to work only on a
part-time basis for a further three months. During this period,
Brashear was paid a "salary" by his employer. Brashear sought
coverage, including work-loss benefits, under his automobile no-
fault insurance policy with Detroit Automobile Inter-Insurance
Exchange. When DAIIE denied his claim, Brashear brought an
action in Kent Circuit Court against DAIIE. Defendant moved
for partial summary judgment, asking the court to strike
plaintiff's claim for work-loss benefits on the basis that plaintiff
had suffered no loss of income and, therefore, was not entitled
to work-loss benefits. The trial court, Stuart Hoffius, J., granted
defendant's motion. Plaintiff appealed. *Held:*

The intent of the Legislature in enacting the work-loss bene-
fits provision of the automobile no-fault insurance act was to
provide such benefits whenever a person is unable to perform
work because of an automobile accident. Such benefits are
payable even where, during the period the injured person is
unable to work, the person continues to receive compensation
from his employer, since such continued compensation is
deemed to be collateral source payments rather than wages for
work performed. Accordingly the trial court erred in granting
partial summary judgment as to plaintiff's work-loss benefits
claim.

Reversed and remanded.

INSURANCE — NO-FAULT INSURANCE — WORK-LOSS BENEFITS — WAGE
CONTINUATION.
An employed person who loses time from work he would have

REFERENCES FOR POINTS IN HEADNOTE
[1] Am Jur 2d, Automobile Insurance § 361.
Validity and construction of "no-fault" automobile insurance plans.
42 ALR3d 229.

performed had that person not been injured in an automobile accident has suffered a work loss within the meaning of the work-loss benefits provision of the automobile no-fault insurance act even if that person's employer continues the person's wages, because such payments by the employer are collateral source payments rather than wages since they are not payments for work done during the time the employee was absent; accordingly, a no-fault insurer is not relieved of the obligation to make no-fault work-loss payments to a person who is unable to work because of an injury received in an automobile accident where the employer of the injured person continues the injured person's wages during the time that person is unable to work because of the injuries (MCL 500.3107[b]; MSA 24.13107[b]).

*Dilley, Dewey & Waddell, P.C.* (by *Jonathan S. Damon*), for plaintiff.

*Baxter & Hammond* (by *Michael D. Wade* and *Jane E. Markey*), for defendant.

Before: ALLEN, P.J., and R. M. MAHER and R. H. BELL,* JJ.

PER CURIAM. Plaintiff was injured in an automobile accident on November 28, 1980, and was unable to work until March 16, 1981. From March 16, 1981, until June 15, 1981, plaintiff worked only on a part-time basis. During this period, plaintiff was paid his "salary"[1] by his employer because of the company's good will.

At the time of the accident, plaintiff was insured by defendant. Plaintiff sought coverage, including work-loss benefits pursuant to MCL 500.3107(b); MSA 24.13107(b), from defendant. When defendant refused to pay, plaintiff brought suit. Defendant moved for partial summary judgment, asking the court to strike plaintiff's claim for work-loss benefits. After a hearing, the circuit court granted defendant's motion. In its written opinion, the

---

* Circuit judge, sitting on the Court of Appeals by assignment.
[1] So characterized by plaintiff's employer.

circuit court held that: "Plaintiff has suffered no loss of income and therefore cannot recover." This decision was based on the court's finding that "[t]he purpose of the act was to compensate for loss of income and Plaintiff suffered none in this regard".

MCL 500.3107; MSA 24.13107 provides, in pertinent part:

"Personal protection insurance benefits are payable for the following:

\* \* \*

"(b) Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he had not been injured \* \* \*.".

Plaintiff argues that the trial court erred by focusing only on the phrase "work loss consisting of income" and by failing to consider the additional language "from work an injured person would have performed". Defendant argues, however, that plaintiff's interpretation would result in double compensation for plaintiff, leaving plaintiff in a better position financially because of the accident than he would otherwise have enjoyed and thus defeating the purposes of the no-fault insurance act.

The interpretation of this portion of MCL 500.3107(b); MSA 24.13107(b) is an issue of first impression in Michigan. However, we are guided in our interpretation by several recent decisions by the Supreme Court, which have interpreted other portions of § 3107 as well as other portions of the no-fault insurance act, MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.* In *Miller v State Farm Ins Co,* 410 Mich 538; 302 NW2d 537 (1981), the Supreme Court determined that the calculation of survivors'

benefits payable under MCL 500.3108; MSA 24.13108 should include consideration of all demonstrable contributions that would have been made to dependents by a deceased person but for his death, less an adjustment for income-related taxes that would have been paid by the deceased had he lived, and without consideration of any personal consumption factor relating to expenses avoided by reason of the deceased's death. 410 Mich 550. The Supreme Court reached this conclusion by "discover[ing] and giv[ing] effect to the Legislature's intention in enacting § 3108 as best [it could] determine it from the language employed in § 3108 and the no-fault act as a whole, and in light of such legislative history as is available". 410 Mich 556. In so doing, the Supreme Court noted that the Legislature based § 3108 upon provisions contained in the Motor Vehicle Basic Protection Insurance Act (MVBPIA) and the Uniform Motor Vehicle Accident Reparations Act (UMVARA) and concluded: "In view of the Legislature's obvious reliance upon the relevant sections of the model acts, it is evident that it was cognizant of, and in agreement with, the policies which underlie the model acts' language". 410 Mich 559. The Court then went on to review the comments of the authors of the model acts to determine the proper interpretation of the language of § 3108.

Again, in *MacDonald v State Farm Ins Co,* 419 Mich 146; 350 NW2d 233 (1984), the Supreme Court turned to the comments of the drafters of the Uniform Motor Vehicle Accident Reparations Act to determine the proper definition of various terms used in § 3107(b) of the no-fault insurance act. The Court stated:

"Our no-fault act is patterned after the Uniform Motor Vehicle Accident Reparations Act, and § 3107(b)

of our act, in relevant part, is virtually identical to § 1(a)(5)(ii) of that act. See 14 ULA, Civil Procedural & Remedial Laws, Uniform Motor Vehicle Accident Reparations Act, pp 50, 54. As we have explained previously, by adopting the language of such a model act, it is evident that the Legislature 'was cognizant of, and in agreement with, the policies which underlie the model [act's] language'." 419 Mich 151.[2]

In this case, we must determine the Legislature's intent with regard to the phrase "work loss consisting of loss of income from work an injured person would have performed" found in § 3107(b). Because the Supreme Court has already found that the Legislature adopted the language of the UMVARA when it fashioned this section of the no-fault act, we again examine the comments of the drafters of the UMVARA to determine both their and the Legislature's intent. The drafter's comments provide as follows:

" 'Work loss', as are the other components of loss, is restricted to accrued loss, and thus covers only actual loss of earnings as contrasted to loss of earning capacity. Thus, an unemployed person suffers no work loss from injury until the time he would have been employed but for his injury. On the other hand, an employed person who loses time from work he would have performed had he not been injured has suffered work loss, even if his employer continues his wages under a formal wage continuation plan or as a gratuity. Employer payments in this situation are collateral source payments rather than wages since they are not payments for work done during the time the employee was absent." 14 ULA, Civil Procedural and Remedial Laws,

---

[2] We note that two other cases from the Court of Appeals have relied upon the drafters' comments to the UMVARA in interpreting language in the no-fault insurance act. See *Freeman v Colonial Penn Ins Co,* 138 Mich App 444; 361 NW2d 356 (1984), and *Krawczyk v DAIIE,* 117 Mich App 155; 323 NW2d 633 (1982), *aff'd in part, rev'd on other grounds* 418 Mich 231; 341 NW2d 110 (1983).

Accident Reparations, Uniform Motor Vehicle Accident Reparations Act, § 1(a)(5)(ii), p 50.

We find this language dispositive and therefore reverse the decision of the circuit court.

Our decision is also supported by the Supreme Court's opinion in *Jarosz v DAIIE,* 418 Mich 565; 345 NW2d 563 (1984). In *Jarosz,* the issue was whether the defendant insurer could decrease the amount of work-loss benefits the insurer was paying the plaintiff by an amount equal to certain social security old-age benefits the plaintiff was also receiving. The defendant attempted to argue that under § 3107 of the no-fault act the setoff should be permitted because, without it, the plaintiff was financially better off than he would have been had the injury not occurred. The Supreme Court expressly declined to examine the question under § 3107 and instead chose to examine it under § 3109(1). Under this section of the no-fault act, the Supreme Court found that the defendant was not entitled to the setoff. The Supreme Court then went on to reject the defendant's analysis under § 3107:

"We find that the manifest intent of the Legislature was to define 'work loss' under § 3107 as income loss attributable solely to the inability to work without regard to non-work-related sources of income. To the extent that the Legislature shares DAIIE's concern that an insured should not be financially better off not working before the accident, it has addressed the subject in § 3109 and has provided for the coordination and setoff of certain kinds of benefits according to the formula we have discussed." 418 Mich 585.

Reversed.